**Louise WHITE, Petitioner-Appellant,**

v.

**Dorothy ARN, Respondent-Appellee.**

No. 84–3963.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1986.

Decided April 9, 1986.

Richard L. Aynes, School of Law, The University of Akron, Akron, Ohio, Dean Carro (argued), for petitioner-appellant.

William J. Steele, Asst. Atty. Gen., Columbus, Ohio, Cordelia A. Glenn (argued), for respondent-appellee.

Before KENNEDY and CONTIE, Circuit Judges, and GIBSON,* District Judge.

CONTIE, Circuit Judge.

Petitioner Louise White appeals the order of the district court dismissing her petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. White essentially raises one issue, whether the Ohio statute which requires defendants to prove self-defense by a preponderance of the evidence is unconstitutional because it removes from the state its burden to prove every element of a crime beyond a reasonable doubt. For the reasons that follow, we find that the Ohio law is constitutional and we therefore affirm the judgment of the district court.

### I.

On November 22, 1979, Thanksgiving Day, White killed her husband, Denver White. At approximately 5:00 p.m. that day White and the decedent were at a local bar. When the decedent expressed a desire to leave, a dispute between the two arose concerning whether White would leave with him. Eventually, the decedent left alone after twice spilling White's drink on her. Upon White's return to their trailer home, the decedent was allegedly violent with White. White left and went to a neighbor's trailer. When she left, she had a handgun in her purse which apparently was the decedent's. While at her neighbor's trailer, White was visibly upset and she discussed the decedent's violence. Another person who was visiting in the trailer examined the handgun and showed White how to operate it.

---

* The Honorable Benjamin F. Gibson, Judge, United States District Court for the Western District of Michigan, sitting by designation.

White then returned to her trailer, purportedly finding the decedent still in a violent state. White claims that the decedent threatened to kill her and approached her wielding a large ash tray. White then shot and killed the decedent, firing the handgun eight times. Seven bullets entered the side or the back of the decedent's body from a distance of two to four feet. The ashtray stand was found near the decedent's head.

The Portage County Grand Jury indicted White on one count of aggravated murder in violation of section 2903.01 of the Ohio Revised Code.[1] White pleaded not guilty and a jury trial was held on April 14–18, 1980. At trial, White raised the affirmative defense of self-defense. In support of her defense, White testified as to the events the day of the shooting and testified that the decedent had beaten her repeatedly in the past. She described two particular events and the acts of violence committed by the decedent.

The trial court instructed the jury that "[t]he burden of proving the defense of Self-Defense is upon the Defendant, and that burden ... is to establish such affirmative defense by a preponderance of the evidence." White objected to this allocation of the burden of proving self-defense on the basis that it removed from the prosecution its burden of proving a defendant's guilt beyond a reasonable doubt as is required by due process. The jury found White not guilty of aggravated murder but guilty of the lesser included offense of murder in violation of section 2903.02 of the Ohio Revised Code.[2] On May 5, 1980, the trial court sentenced White to a prison term of 15 years to life.

White appealed her conviction to the appropriate Ohio appeals court, which affirmed her conviction. *State v. White*, Case No. 1048 (11th Dist.Ct. of App.1981). White then appealed to the Ohio Supreme Court which dismissed the appeal for lack of a substantial constitutional question. *State v. White*, Case No. 81–1744 (Ohio S.Ct.1982). Subsequently, White filed a petition for writ of certiorari with the United States Supreme Court. On October 4, 1982, the Court denied the petition. *White v. Ohio*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982).

On April 26, 1984, White filed the instant petition for writ of habeas corpus with the District Court for the Northern District of Ohio. As the sole ground for relief, White claimed the following:

Petitioner's Fourteenth Amendment due process rights to require the state to prove beyond all reasonable doubt were violated when, over her counsel's objection, the state placed the burden to prove that she acted in self-defense upon her.

The district court judge, pursuant to local rule, submitted the case to a magistrate for recommendation. The magistrate prepared an extensive opinion recommending that the petition be denied. On November 2, 1984, the district court adopted the opinion and dismissed White's habeas petition. This timely appeal followed.

## II.

### A. Introduction

The focus of this habeas claim, whether Ohio may constitutionally place the burden of proving self-defense on the accused, often has been the subject of judicial discussion during the past decade. A brief historical explanation is necessary to put the present status of this issue in perspective. Prior to 1974, Ohio followed the common law tradition of allocating to defendants the burden of proving affirmative defenses by a preponderance of the evidence. *State v. Seliskar*, 35 Ohio St.2d 95, 298 N.E.2d 528 (1973). On January 1, 1974, however, a restructured Ohio Criminal Code became effective. In 1976, the Ohio Supreme Court interpreted the new statute concern-

---

**1.** Section 2903.01 provides in pertinent part:
Aggravated Murder.
(A) No person shall purposely, and with prior calculation and design, cause the death of another.

**2.** Section 2903.02 provides in pertinent part:
Murder.
(A) No person shall purposely cause the death of another.

ing affirmative defenses, section 2901.05(A) of the Ohio Revised Code.[3] *State v. Robinson*, 47 Ohio St.2d 103, 351 N.E.2d 88 (1976). The Court observed that a majority of states had abandoned the common law approach in favor of requiring that the prosecution disprove any affirmative defense raised by the evidence in a given case. *Id.* at 108–09, 351 N.E.2d 88. The Court then determined that the Ohio legislature intended to adopt the majority rule in enacting section 2901.05(A), and accordingly held that in Ohio, a defendant asserting an affirmative defense only had the burden of going forward with evidence sufficient to create an issue as to that defense. *Id.* at 110–13, 351 N.E.2d 88. *Robinson* was given retroactive effect to the effective date of section 2901.05(A) in *State v. Humphries*, 51 Ohio St.2d 95, 364 N.E.2d 1354 (1977). Section 2901.05(A) was amended, however, effective November 1,

1978, to reinstate the common law rule requiring the defendant to prove an affirmative defense by a preponderance of the evidence.[4] This amended version of section 2901.05(A) was in effect at the time of White's trial. Accordingly, our analysis focuses on the constitutionality of that statute's allocation of the burden of proving affirmative defenses, and in particular, whether the statute's requirement that White prove self-defense by a preponderance of the evidence unconstitutionally removed from the prosecution its burden of proving all the elements of murder as defined in Ohio beyond a reasonable doubt.

As a final introductory comment, we note that the issue of whether Ohio may constitutionally place the burden of proving self-defense on the accused was the underlying substantive issue in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).[5] The Court observed that the issue

**3.** Section 2901.05(A) provided at that time:
Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof is upon the prosecution. The burden of going forward with the evidence of an affirmative defense is upon the accused.

**4.** Section 2901.05(A), as amended, now provides:
Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.

**5.** The defendant in *Isaac* was tried in 1975. The state trial court instructed the jury that Isaac bore the burden of proving self-defense by a preponderance of the evidence. Isaac raised no objection to this instruction. *State v. Robinson, supra,* was decided after Isaac's conviction. Isaac then relied on *Robinson* on direct appeal in an attempt to challenge the trial instructions. The challenge was rejected by the state courts, however, because of Isaac's failure to object at trial, which was held to waive the claim on appeal. *Isaac,* 456 U.S. at 115, 102 S.Ct. at 1565. This court, sitting *en banc,* considered Isaac's claim that he had been denied due process by bearing the burden of proving that he acted in self-defense. *Isaac v. Engle,* 646 F.2d 1129 (6th Cir.1980). A majority of the court found that the "cause" and "prejudice" requirements of

*Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), were met and accordingly addressed the merits of Isaac's claim. A majority of the judges agreed that the jury instructions violated due process, but no majority agreed on a rationale. Four judges believed that the 1974 version of § 2901.05(A) defined absence of self-defense as an element of the crime charged, thereby requiring the prosecution to prove absence of self-defense beyond a reasonable doubt. *Isaac,* 646 F.2d at 1135–36. Another judge believed Isaac's due process rights had been violated based on Ohio's arbitrary refusal to give him the benefit of *Robinson. Id.* at 1136–37. A sixth judge thought that, regardless of the language of § 2901.05(A), the Due Process Clause required the state prove the absence of self-defense since, in that judge's view, self-defense negates criminal intent which was an essential element of the crime charged. *Id.* at 1136. The Supreme Court reversed, finding that Isaac had not preserved the issue for habeas review since he failed to satisfy Ohio's contemporaneous objection requirement and also holding that he failed to demonstrate cause for the default. *Isaac,* 456 U.S. at 135, 102 S.Ct. at 1575.

Because the present case focuses on the amended version of § 2901.05(A), the majority conclusion that Isaac's due process rights were violated is inapplicable to our analysis. The only opinion that is arguably applicable is the single-judge concurrence which was based on the Due Process Clause rather than the language of § 2901.05(A). For the reasons below, we find that opinion unpersuasive.

presented a "colorable" and "at least a plausible" constitutional claim. *Id.* at 122, 102 S.Ct. at 1568. However, because the defendants asserting the claim failed to preserve the claim before the state courts, the principles set forth in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), barred the Court's consideration of the claim in a habeas proceeding. Accordingly, the Court did not reach the merits of Isaac's case. We have no such problem here, as White raised her present claim before the state courts on direct appeal. Since there has been no procedural default, and there exists no binding precedent,[6] we are free to decide this claim on its merits.

### B. *Winship, Mullaney* and *Patterson*

■ White argues that under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and its progeny, *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), Ohio's allocation of the burden of proving self-defense is unconstitutional. *Winship* recognized the broad principle that the Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364, 90 S.Ct. at 1072.

The Supreme Court elaborated on this issue process requirement in *Mullaney*.

At issue in *Mullaney* was a Maine rule which required a defendant charged with murder to prove that he acted in the heat of passion on sudden provocation in order to reduce the charge to manslaughter. The defendant in *Mullaney* was charged with murder, which the Maine statute defined as the unlawful killing of a human being "with malice aforethought, either express or implied." *Mullaney*, 421 U.S. at 686 n. 3, 95 S.Ct. at 1883 n. 3. The trial court instructed that if the prosecution established the killing was intentional and unlawful, "malice aforethought was to be implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." *Id.* at 686, 95 S.Ct. at 1883. The trial court emphasized that heat of passion was inconsistent with malice aforethought and accordingly proof of heat of passion negated the element of malice aforethought. *Id.* at 686–87, 95 S.Ct. at 1883. The Supreme Court held that the Maine presumption unconstitutionally shifted to the defendant the burden of proving an essential element of the crime of murder in violation of the *Winship* rule that the prosecution bears the burden of proving all elements of a crime. Accordingly, *Mullaney* stands for the proposition that the Due Process Clause prohibits a state from requiring an accused to disprove an element of the crime charged which the state has presumed to exist.[7]

**6.** The issue was also before this court in *Melchior v. Jago*, 723 F.2d 486 (6th Cir.1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984). The petitioner in *Melchior* was convicted of felony murder under Ohio's aggravated murder statute, Ohio Rev.Code § 2903.01(B), which provides now as it did then that "[n]o person shall purposely cause the death of another while committing or attempting to commit ... aggravated robbery ...." The petitioner contended before this court that Ohio could not constitutionally shift the burden of proving self-defense to the accused. The petitioner argued that crimes requiring "purposeful behavior imply a degree of culpability which is necessarily absent when one acts in self defense," and that the state accordingly should be required to disprove the defense of self-defense as part of its duty to prove the element of *mens rea*. *Id.* at 491–92. The merits of this claim were not ad-

dressed, however, because the evidence conclusively indicated that the petitioner had not acted in self-defense. Therefore, any error in allocating the burden of proving self-defense was harmless. *Id.* at 494. Thus, despite the observation in the majority opinion that *Isaac* may have "cast doubt upon" the proposition that due process does not preclude a state from placing the burden of proving self-defense on an accused, the court did not resolve "this open question." *Id.* at 492. *But see id.* at 494–95 ("the State of Ohio may constitutionally place the burden of proving self-defense upon the defendant in this case" since "petitioner's affirmative defense did not serve to negate any elements of this offense") (Contie, J., concurring).

**7.** Some commentators interpreted *Mullaney* as indicating that the Due Process Clause requires the prosecution to prove all facts affecting "the

The Supreme Court further addressed the principle of *Winship* in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In *Patterson,* the Court considered a New York law requiring an accused charged with second-degree murder to prove the affirmative defense of extreme emotional disturbance by a preponderance of the evidence to reduce the murder charge to manslaughter. In determining whether the statute was constitutional, the Court utilized a two-step analysis. It first determined the elements which constituted the offense of murder. As defined by New York's statute, the elements the prosecution was required to prove beyond a reasonable doubt were death, intent to kill, and causation. *Id.* at 205, 97 S.Ct. at 2324. The Court then considered whether the affirmative defense of acting under extreme emotional disturbance negated any of these elements. The Court concluded that it did not, stating that the defense "does not serve to negative any of the facts of the crime which the State is to prove in order to convict of murder." *Id.* at 207, 97 S.Ct. at 2325. Since the defense bore "no direct relationship to any element of murder," the Court held the New York statute did not violate the Due Process Clause by shifting to defendants the burden of disproving any fact essential to the crime charged. *Id.* at 201, 97 S.Ct. at 2322.

In addition to this holding, the Court discussed, generally, allocating the burden of proving affirmative defenses. Based on notions of legislative flexibility, the Court decline[d] to adopt as a constitutional imperative, operative country wide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defense related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of socie-ty's interest against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. *Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case.*

*Id.* at 210, 97 S.Ct. at 2327 (emphasis added). With respect to the growing number of states assuming the burden of disproving affirmative defenses, the Court importantly observed:

Nor does the fact that a majority of the States have now assumed the burden of disproving affirmative defenses—for whatever reason—mean that those States that strike a different balance are in violation of the Constitution.

*Id.* at 211, 97 S.Ct. at 2327 (footnote omitted). While this observation does not dictate that the Ohio law which places the burden of proving self-defense on the accused is constitutional, it certainly indicates that the choice made by Ohio's legislature is not unconstitutional simply because self-defense is an affirmative defense.

In sum, these Supreme Court cases provide the principles from which we must structure our analysis. We must examine whether Ohio, by requiring White to prove her defense of self-defense, unconstitutionally avoided its obligation to prove beyond a reasonable doubt every fact necessary to constitute the crime of murder. This determination turns on whether Ohio shifted to White the burden of disproving an element of murder which Ohio presumed existed. The proper approach to resolving this ques-

degree of culpability" beyond a reasonable doubt. *See, e.g.,* Note, Affirmative Defenses After *Mullaney v. Wilbur:* New York's Extreme Emotional Disturbance, 43 Brooklyn L.Rev. 171 (1976); Note, Affirmative Defenses in Ohio After *Mullaney v. Wilbur,* 36 Ohio St.L.J. 828 (1975); Comment, Unburdening the Criminal

Defendant: *Mullaney v. Wilbur* and the Reasonable Doubt Standard, 11 Harv.Civ.Rights-Civ. Lib.L.Rev. 390 (1976). The Supreme Court, however, rejected such a broad interpretation of *Mullaney* in *Patterson,* 432 U.S. at 214–15 n. 15, 97 S.Ct. at 2329 n.15 ("The Court did not intend *Mullaney* to have such far-reaching effect.").

tion, as dictated by *Patterson*, is first to determine the elements of murder, and second to determine whether the defense of self-defense necessarily negates any of those elements.[8]

The first step under *Patterson* is to determine the elements of the crime of murder, the crime of which White was convicted. Ohio Rev.Code § 2903.02(A)[9] provides:

No person shall purposely cause the death of another.

As succinctly indicated by the statutory language, this crime has two elements: (1) purposely; and (2) cause the death of another. *State v. Muscatello*, 57 Ohio App.2d 231, 247, 387 N.E.2d 627 (1977), *aff'd*, 55 Ohio St.2d 201, 378 N.E.2d 778 (1978); *State v. Davis*, 8 Ohio App.3d 205, 209, 456 N.E.2d 1256 (1982) ("The elements of murder ... are expressly delineated in R.C. 2903.02."). "Purposely," the intent element of the crime of murder, is defined by Ohio Rev.Code § 2901.22(A) which provides:

A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

As defined by statute, then, the prosecution has the burden of proving beyond a reasonable doubt: (1) that the accused specifically intended to cause the death of another, and (2) that death actually occurred. These are the only facts or elements the statute expressly requires the prosecution to establish in order to convict an accused of murder.

Having determined the elements of murder as defined by statute, we next turn to the second inquiry in the *Patterson* analysis, whether self-defense negates either of the elements. We conclude that it does not. The defense has been described as being "in the nature of a confession and avoidance, by which a defendant essentially

**8.** The Ohio courts have "long determined that self-defense is an affirmative defense." *State v. Martin*, 21 Ohio St.3d 91, 93, 488 N.E.2d 166 (1986); *see also State v. Davis*, 8 Ohio App.3d 205, 209, 456 N.E.2d 1256 (1982). As such, our inquiry into the constitutionality of requiring defendants to prove self-defense is conclusively guided by the analysis established in *Patterson* for examining the allocation of the burden of proving an affirmative defense.

**9.** This codification of the elements of murder differs from the analogous previous codification of second-degree murder in Ohio. The prior statute was at issue in several of our previous cases concerning the burden of proving self-defense. *See, e.g., Carter v. Jago*, 637 F.2d 449, 455 (6th Cir.1980), *cert. denied*, 456 U.S. 980, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982); *Hooper v. Perini*, 641 F.2d 445, 446 (6th Cir.), *cert. denied*, 454 U.S. 817, 102 S.Ct. 95, 70 L.Ed.2d 86 (1981). Second-degree murder was defined by Ohio Rev.Code § 2901.05, which provided in part that "[n]o person shall purposely and maliciously kill another."

As the language indicates, that offense had an additional element of malice which is no longer a fact to be proven by the State. *See Kolotich v. State*, 104 Ohio St. 156, 157, 135 N.E. 544 (1922) (malice is an essential element of murder in the second degree).

White asserts the applicability of *Hooper* as support for an argument that self-defense ne-

gates an element of murder. In *Hooper*, a habeas petitioner claimed that the state trial judge committed constitutional error in placing upon the petitioner the burden of proving self-defense by a preponderance of the evidence. A majority of the panel stated that "proof of self-defense would clearly negate the malice element" of murder. *Hooper*, 641 F.2d at 446. Habeas relief was not granted, however, because the evidence clearly indicated the petitioner had not killed the deceased in self-defense. Therefore, any error placing the burden of proof on the petitioner was harmless.

White's reliance on *Hooper* is misplaced for three reasons. First, the statement in *Hooper* was not the holding of the court but was merely *dicta*. Second, as we have indicated, the "malice" element which *Hooper* stated was negated by self-defense is no longer an element of murder. Accordingly, the statement in *Hooper* is no longer applicable. Third, the statement in *Hooper* is in direct conflict with this court's previous decision in *Carter v. Jago, supra. Carter* held that placing the burden of proving self-defense upon an accused in a second-degree murder trial did not unconstitutionally remove from the prosecution its burdens as set forth in *Winship. Carter*, 637 F.2d at 454–57. It is the well-accepted rule in this Circuit that one panel of this court cannot overrule a decision of another panel. *Meeks v. Illinois Central Gulf R.R.* 738 F.2d 748, 751 (6th Cir.1984). Accordingly, *Carter* controls over *Hooper*.

admits the existence of facts which tend to establish the elements of the crime." *Davis,* 8 Ohio App.3d at 209, 456 N.E.2d 1256. When a defendant asserts the defense of self-defense in a murder trial, the defendant does not dispute or negate the elements of "purposely" or "cause the death of another." Rather, the defendant solely seeks to establish the elements of self-defense, which are unrelated to the elements of murder. *See Isaac v. Engle,* 646 F.2d 1129, 1139 (6th Cir.1980) (*en banc*) (Lively, J., dissenting), *rev'd,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (The defense of self-defense "admits the facts claimed by the prosecution to establish an offense but relies on the existence of a separate set of facts or circumstances which the law recognizes as an excuse. When established, this excuse exempts the defendant from liability."). The elements which must be shown to establish self-defense are "(1) the slayer was not at fault in creating the situation giving rise to the affray, ... (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force, ... and (3) the slayer must not have violated any duty to retreat or avoid the danger." *State v. Robbins,* 58 Ohio St.2d 74, 79–80, 388 N.E.2d 755 (1979). Since the defense of self-defense does not negate either of the statutory elements of murder, it appears that Ohio did not violate the Due Process Clause by requiring White, pursuant to Ohio Rev. Code § 2901.05(A), to prove her defense of self-defense by a preponderance of the evidence.[10]

White argues, however, that the crime of murder includes more than these two elements. White sets forth five additional elements which she argues must be established by the prosecution to convict a defendant of murder. White further claims that self-defense necessarily negates these elements and therefore concludes, in light of *Patterson,* that the prosecution must bear the burden of disproving self-defense in order to satisfy the due process requirement that it prove all elements of a crime beyond a reasonable doubt. The elements asserted by White are: (1) criminal conduct; (2) criminal intent; (3) a voluntary act; (4) unlawfulness; and (5) a requirement that the crime be against the "Peace and Dignity of the State of Ohio." Based upon prior decisions of this court, we conclude that none of these elements are elements of the crime of murder and therefore self-defense does not negate any of these elements.

White argues that criminal conduct is an element of murder and that the defense of self-defense negates this element since it establishes that the conduct was non-criminal in nature. We rejected the same argument with respect to the crime of aggravated assault in *Thomas v. Arn,* 704 F.2d 865, 875 (6th Cir.1983). Even though the crime at issue in *Thomas* was aggravated assault, Ohio Rev.Code § 2903.12,[11] that case is completely applicable here. White contends that the five additional elements, including criminal conduct, are elements of *all* Ohio crimes. Since we have already decided that criminal conduct is not an element of aggravated assault, we must also conclude that it is not an element of mur-

---

**10.** This conclusion is consistent with the Ohio decisions which have held that self-defense does not negate any essential elements of the crime charged and that accordingly the requirement that the defendant bear the burden of proving self-defense by a preponderance of the evidence is constitutional. *See State v. Martin,* 21 Ohio St.3d 91, 488 N.E.2d 166 (1986) (defendant charged with and found guilty of aggravated murder, Ohio Rev.Code § 2903.01); *State v. Poole,* 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973) (defendant charged with and found guilty under prior statutory scheme of murder

in the first degree, defense of self-defense characterized as a "justification for admitted conduct"); *State v. Davis,* 8 Ohio App.3d 205, 456 N.E.2d 1256 (1982) (defendant convicted of aggravated murder, Ohio Rev.Code § 2903.01(A), conviction reduced to murder, Ohio Rev.Code § 2903.02(A)).

**11.** The elements of the Ohio crime of aggravated assault are: (1) knowingly; and (2) cause physical harm to another person. *Thomas,* 704 F.2d at 875.

der. Accordingly, we reject White's argument to the contrary.

White next argues that self-defense negates the element of criminal intent. White asserts that this element, a "blameworthy" or "guilty" state of mind, must be established under Ohio criminal law in order for an act to be criminally punishable. We addressed this same argument and the same asserted case authority [12] in *Thomas*. As we observed in *Thomas*, the "guilty" and "blameworthy" states of mind required to convict an accused are specified in Ohio Rev.Code § 2901.22, which defines the mental elements of purposely, knowingly, recklessly and negligently. *Thomas*, 704 F.2d at 876 n. 14. By these specific definitions, the Ohio Legislature has supplanted the common law notions of *mens rea*. *Id.* Thus, in each crime in Ohio the requisite criminal intent is expressly provided and is not merely a general element of "blameworthiness." The criminal intent element of murder is "purposely," and, as we stated previously, proving self-defense does not negate this element. *See id.* ("Although a person claiming to have acted in self-defense may not literally have a 'guilty' or 'blameworthy' state of mind, he may very well have knowledge of the probable results of his actions, and this mental state is sufficient to convict for aggravated assault.").

White next argues that "voluntariness" is an element of murder which is negated by self-defense. White observes that Ohio Rev.Code § 2901.21 imposes the requirement that an act be voluntary in order to impose criminal liability.[13] White contends that an act of self-defense is more of a reflex action than a voluntary one, citing *State v. Hardy*, 60 Ohio App.2d 325, 329, 397 N.E.2d 773 (1978), and therefore concludes that self-defense negates the voluntary act element of murder. We rejected the same argument, which was based on the same case authority, in *Thomas*. As we observed in *Thomas*, Ohio defines what constitutes a voluntary act by stating which acts are involuntary. Section 2901.-21(C) provides that "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actors volition, are involuntary acts." In light of these examples of involuntary acts, we conclude, as we did in *Thomas*, that an act in self-defense is not an involuntary act and therefore does not negate the voluntary act requirement. *Thomas*, 704 F.2d at 876.

White next argues that self-defense negates the Ohio constitutional requirement that all indictments allege that the acts complained of were "against the Peace and Dignity of the State of Ohio." Ohio Const. art. IV, § 20. White contends that an act in self-defense is not illegal and therefore cannot be against the "peace and dignity" of the State. White cites no cases which support the proposition that this is an element of every crime which must be established by the prosecution, however, and accordingly we reject this argument as we did in *Thomas*. 704 F.2d at 876 n. 15.

White lastly argues that unlawfulness is an element of all Ohio crimes and that self-defense negates this element. This argument, and the cases which purportedly support it, has been rejected repeatedly. *See Carter*, 637 F.2d at 456 n. 6; *Thomas*, 704 F.2d at 876–77; *State v. Morris*, 8 Ohio App.3d 12, 18–19, 455 N.E.2d 1352 (1982). The Ohio appellate court in *Morris* explained its decision thusly:

> Once the prosecution has proven each element of felonious assault, the prosecution has proven the unlawfulness of defendant's acts. When the accused as-

---

**12.** White relies on an Ohio appellate decision, *State v. Clifton*, 32 Ohio App.2d 284, 286, 287, 290 N.E.2d 921 (1972), and a concurring opinion in another Ohio appellate decision, *State v. Robinson*, 48 Ohio App.2d 197, 206, 209, 356 N.E.2d 725 (1975) (Whiteside, J., concurring), *aff'd on other grounds*, 47 Ohio St.2d 103, 351 N.E.2d 88 (1976).

**13.** Section 2901.21(A) provides in pertinent part:

A person is not guilty of an offense unless ... (1) His liability is based on conduct which includes ...a voluntary act ....

serts an affirmative defense as a justification for an otherwise unlawful act, the burden of proving that justification can be constitutionally assigned to the accused .... A contrary ruling would mean that the state is constitutionally required to disprove every affirmative defense, since every defense is a justification for the conduct involved which causes that conduct to be "lawful."

8 Ohio App.3d at 18–19, 455 N.E.2d 1352 (citations omitted). We find this reasoning persuasive and conclude that unlawfulness is not an element of murder in Ohio and therefore self-defense does not negate unlawfulness.[14]

Having found all of White's arguments in support of additional elements of murder to be unpersuasive, we are left with the conclusion that the crime of murder consists only of two elements: (1) purposely; and (2) cause the death of another. These elements are not negated by the affirmative defense of self-defense. An affirmative defense under Ohio law is either:

(1) A defense expressly designated as affirmative; [or]

(2) A defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence.

Ohio Rev.Code § 2901.05(C). This definition indicates that an affirmative defense does not negate an element of a crime; rather, it indicates that an affirmative defense excuses punishment for a crime the elements of which have been established and admitted. *See Thomas*, 704 F.2d at 877. No elements of murder are "presumed" under Ohio law, so the principles of *Mullaney* have not been violated. Nor have the principles of *Patterson* been vio-

lated, since neither of the elements of murder are negated by the defense of self-defense. Accordingly, we hold that placing the burden of proving self-defense by a preponderance of the evidence upon White did not violate the Due Process Clause of the Fourteenth Amendment.

### III.

White asserts two additional arguments. She contends that there is a constitutional right of self-defense, founded in the Eighth, Ninth, and Fourteenth Amendments, which an accused cannot be required to prove. We decline to adopt this notion. In *Patterson* the Supreme Court enunciated the proper analysis for determining the constitutionality of the allocation of the burden of proving affirmative defenses. That analysis is the correct way to resolve the present issue. For this court to hold that self-defense is a constitutional right which a defendant cannot constitutionally be required to prove, would be to reject the Supreme Court's established analysis and to dispose of this case on a novel, unaccepted theory. *But see Isaac v. Engle*, 646 F.2d 1129 (6th Cir.1980) (*en banc*) (Merritt, J., dissenting on other grounds), *rev'd*, 456 U.S. 107, 102 S.Ct. 1158, 71 L.Ed.2d 783 (1982) ("I believe that the Constitution prohibits a state from eliminating the justification of self-defense from its criminal law and requires the state to prove as an element of the crimes of assault and homicide that no such self-defense justification exists."). This we decline to do. Rather, we adhere to the *Patterson* elements analysis in deciding this case. As stated above, that analysis dictates that White's due process rights were not violated.[15]

---

**14.** If unlawfulness were a statutory element of crimes in Ohio, White's argument would be correct. As this court noted in *Carter:*

Where state law includes unlawfulness or the absence of self-defense as an element of murder, the courts have held instructions putting the burden of proving self-defense upon the defendant to be constitutionally infirm under *Mullaney.*

637 F.2d at 456 n. 6 (citations omitted). However, *Carter* conclusively held that Ohio law did

not include unlawfulness as an element of murder, rejecting the same case support relied upon by White in this case. *See also Thomas*, 704 F.2d at 876–77.

**15.** This holding does not reject the notion that a defendant has a limited right to act in self-defense under certain circumstances. Ohio has in fact recognized this right by allowing for the defense of self-defense. Our holding simply embodies a determination that Ohio's allocation of

■ White lastly argues that the jury instructions were contradictory and violative of due process. We disagree. On review, the question is whether the instructions when considered as a whole properly submitted the issues regarding proof to the jury. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Further, before we may overturn a state conviction based on a claimed error in jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id.* at 146, 94 S.Ct. at 400. Viewed in this light, we conclude that the instructions given in this case were not unconstitutional.

The trial court instructed the jury on the burden of proof, in pertinent part, as follows:

> The Court instructs you that when the Defendant entered her plea of Not Guilty to the Indictment and any lesser included offenses, that put in issue all of the essential elements of the crimes charged, and, thereby, places upon the State the burden of proof beyond a reasonable doubt.
>
> In addition to the plea of Not Guilty, the Defendant also asserts what is called an affirmative defense, in this case Self-Defense.
>
> The burden of proving the defense of Self-Defense is upon the Defendant, and that burden upon the Defendant is to establish such affirmative defense by a preponderance of the evidence.
>
> Preponderance of the evidence is the greater weight of the evidence, that is, evidence that you believe because it outweighs or overbalances the evidence opposed to it.
>
> \* \* \* \* \* \*
>
> If you find the State proved beyond a reasonable doubt all of the essential elements of the crime of Aggravated Murder or a lesser included offense, and the

> Defendant failed to prove by a preponderance of the evidence the defense of Self-Defense, then your verdict must be Guilty.
>
> If you find that the State failed to prove beyond a reasonable doubt any one of the essential elements of the crime of Aggravated Murder or the lesser included offense, or if you find the Defendant proved by a preponderance of the evidence the defense of Self-Defense, then you must find the Defendant Not Guilty.

These instructions sufficiently informed the jury, in accordance with Ohio law, that the prosecution had the burden of proving the elements of murder beyond a reasonable doubt and that White bore the burden of proving self-defense by a preponderance of the evidence. Further, contrary to White's contention, there are no inherent contradictions in the instructions. That is, the jury's compliance with one portion of the instructions would not necessarily lead to its disregard of another portion. *Cf. Thomas v. Leeke*, 725 F.2d 246 (4th Cir. 1984) (granting habeas relief on the basis that jury instructions were so contradictory and confusing that they were constitutionally infirm). The instructions in this case sufficiently explained the jury's roles and the roles were not inconsistent or contradictory. Therefore, we hold that these instructions were not constitutionally infirm.

Accordingly, for the reasons set forth above, we AFFIRM the judgment of the district court.

---

the burden of proving self-defense does not violate the Due Process Clause requirement that the prosecution prove all elements of an offense beyond a reasonable doubt.